Eastern District of Kentucky
FILED
AUG 22 2022
AT FRANKFORT
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

UNITED STATES OF AMERICA, ET AL. EX REL. [UNDER SEAL]

Plaintiff,

v.

[UNDER SEAL]

CASE NO. 3:22-cv-47-GFVT

*QUI TAM* COMPLAINT

FILED UNDER SEAL

**DO NOT FILE ON PACER UNLESS UNSEALED BY COURT ORDER**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES ex rel.<br>AUSTIN CURNUTTE<br><br>BRINGING THIS ACTION ON BEHALF OF THE UNITED STATES OF AMERICA<br><br>United States Attorney<br>Eastern District of Kentucky<br>230 W. Vine Street, Suite 300<br>Lexington, KY 40507-1612<br><br>-and-<br><br>Attorney General of the United States<br>Department of Justice<br>10th & Constitution Avenue, N.W.<br>Washington, D.C. 20530<br><br>**Plaintiff,**<br>v.<br><br>MOUNTAIN COMPREHENSIVE CARE CENTER, INC.<br><br>&<br><br>MOUNTAIN PLUS SERVICES, INC.<br><br>**Defendants.** | Case No: __________________ |

## *QUI TAM* COMPLAINT

The Relator, AUSTIN CURNUTTE, by and through the undersigned counsel, and on behalf of the Plaintiff, the United States of America, alleges based upon personal knowledge and

relevant documents, as follows for his Complaint under the Federal False Claims Act, 31 U.S.C. § 3729-3733, *et seq*., against the Defendants, MOUNTAIN COMPREHENSIVE CARE CENTER, INC. and MOUNTAIN PLUS SERVICES, INC.

**NATURE OF THE CASE**

This is an action brought pursuant to the Federal False Claims Act, 31 U.S.C. § 3729-3733, *et seq*., by the Relator, AUSTIN CURNUTTE, to recover reimbursements obtained from Medicare, Medicaid and other government programs by the Defendants, MOUNTAIN COMPREHENSIVE CARE CENTER and MOUNTAIN PLUS SERVICES, INC. (collectively "Defendants"). The fraudulent submissions made by the Defendants include: (i) billing for non-qualified mental health consultations; (ii) billing for medically unnecessary mental health consultations; (iii) billing for services that were not provided; and (iv) double billing for mental health consultations. Defendants knew of the fraudulent submissions and instructed or participated directly in the submission of fraudulent claims.

The fraudulent submissions occurred as the result of billing practices that were instructed to subordinate employees of the Defendants' by their superiors/supervisors. The fraudulent billing practices were as follows: : (A) billing for "individual" therapy sessions that did not occur; (B) falsifying time submissions in which overlapping services were performed by multiple employees; (C) falsifying time by overstating hours worked with time in which no medical services were provided; (D) billing multiple "individual" sessions, while meeting with multiple patients; (E) billing when no qualified services were provided; and (F) refusing to discharge patients who lacked a medical necessity for services. The United States relied upon the statements in submitting claims for reimbursement to Defendants, and were defrauded as a result of the fraudulent billing practices identified above.

The Relator raised concerns regarding the fraudulent billing practices to his superiors. In addition, the Relator resisted the Defendants by refusing to submit records that contained information generated through the fraudulent billing practices. As a result of this conduct, the Relator was terminated from his employment with the Defendants.

## PARTIES

1. The Relator, Austin Curnutte ("Curnutte" or "Relator"), is an individual residing in Prestonsburg, Floyd County, Kentucky. Curnutte has personal knowledge of the facts and allegations contained in this Complaint by virtue of his position, during the relevant time periods, as an employee of Mountain Comprehensive Care Center.

2. The Defendant, Mountain Comprehensive Care Center, Inc. ("MCCC"), is a Kentucky non-profit corporation with its principal place of business in Kentucky.

3. According to publicly available filings, MCCC is an organization that "provides access to a comprehensive array of high-quality services that will result in success and satisfaction for customers, the company and the community."

4. MCCC also serves as one of Kentucky's twelve (12) community mental health agency with a district of Magoffin, Floyd, Johnson, Martin and Pike County Kentucky.

5. According to MCCC's webpage, MCCC operates outpatient clinics throughout Kentucky with outpatient facilities in Floyd, Johnson, Knott, Leslie, Letcher, Magoffin, Martin, Pike, Perry, Wolfe, Bath, Boyd, Carter, Greenup, Lawrence, Mason, Morgan, Rowan, Bourbon, Clark, Fayette, Garrard, Harrison, Madison, Powell, Caldwell, Christian, Daviess, Hopkins, Marshall, McCracken.

6. The Defendant, Mountain Plus Services, Inc. ("Mountain Plus"), is a Kentucky non-profit corporation with its principal place of business in Kentucky.

7. Mountain Plus is identified as a 501(c)(3) charitable organization whose principal mission is "to engage in all tasks necessary for the support of Mountain Comprehensive Care Center".

8. The Relator was instructed that he was an employee of Mountain Plus.

9. MCCC and Mountain Plus are hereinafter referred to collectively as the Defendants.

10. Both MCCC and Mountain Plus receive a significant portion of their revenues through state and federal reimbursements.

11. As a CMHC, Defendants receive a significant portion of federal tax dollars through: (a) direct participation in Medicare programs; (b) state contracts which are paid for nearly 70 percent through federal funds; (c) participation in Medicaid reimbursement programs which are paid for with federal funds.

## JURISDICTION AND VENUE

12. Jurisdiction in this Court is proper pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This Court also has jurisdiction pursuant to 28 U.S.C. § 1331.

13. The Court may exercise personal jurisdiction over the Defendants, and venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391 because the acts proscribed by 31 U.S.C. §§ 3729 et seq., and complained of herein took place in part in this District and the Defendants transacted business in this District:

A. At all times relevant to this Complaint, the Defendants made submissions for repayment through Franklin County, Kentucky.

B. The fraudulent submissions for payment were transmitted through processors in Franklin County, Kentucky.

14. Pursuant to 31 U.S.C. § 3730(b)(2), the Relator prepared and served the original Complaint on the Attorney General of the United States, and the United States Attorney for the Eastern District of Kentucky, and a statement of all material evidence and information in his possession, of which he is the original source. This disclosure statement was supported by material evidence known to the Relator at the time of filing that establishes the existence of Defendants' false and fraudulent claims. Because the disclosure statement included attorney-client communications (including common interest privilege) and work product of Relator's attorneys, and was submitted to those Federal officials in their capacity as counsel for the United States – a potential and real party in interest in this action – the Relator understands this disclosure to be confidential and exempt from disclosure under the Freedom of Information Act. 5 U.S.C. § 552; 31 U.S.C. § 3729(c).

## LEGAL BACKGROUND

15. The Federal False Claims Act ("FCA"), originally enacted in 1863 during the Civil War, was substantially amended by the False Claims Amendments Act of 1986 and signed into law on October 17, 1986. Congress enacted these amendments to enhance the Government's ability to recover losses sustained as a result of fraud against the United States and to provide a private cause of action for the protection of individuals who act in furtherance of the purposes of the Federal False Claims Act. Congress amended the FCA as a part of the Fraud Enforcement Recovery Act of 2009 on May 20, 2009, making certain amendments retroactive, including 31 U.S.C. § 3729(a)(1)(B). It amended the FCA again as part of the Patient Protection and Affordable Care Act on March 23, 2010.

16. Violations of the FCA subject the defendant to civil penalties of not less than $5,500 and not more than $11,000 per false claim, as adjusted for inflation, plus three times the

amount of damages that the Government sustains as a result of the defendant's actions. 31 U.S.C. § 3729(a).

17. The complaint is to be filed under seal for 60 days (without service on the defendant during such 60-day period) to enable the Government: (a) to conduct its own investigation without the defendant's knowledge and (b) to determine whether to join the action. 31 U.S.C. § 3731.

18. Relator states that all allegations are based on evidence obtained directly from Relator independently and though his own labor and efforts. Additionally, Relator voluntarily made pre-filing disclosures to the government as to the factual basis of his claims. Therefore, Relator remains an original source of information within the meaning of the False Claims Act, 31 U.S.C. § 3730(e)(4)(B).

**FACTUAL ALLEGATIONS/ FRAUDULENT SCHEME**

19. The Defendants, engaged in a routine pattern and fraudulently submitted claims for payment to government healthcare programs.

20. The fraudulent activity raised by the Relator in this *Qui Tam* Complaint involves the following fraudulent schemes: (A) billing for non-reimbursable services; (b) routinely falsifying time records; (c) refusing to discharge patients who lacked medical necessity; and (d) billing for services that were not provided.

21. Relator was hired to work in the Juvenile Intervention and Services Program (JISP) with Defendants as a "Mental Health Associate" in January 13, 2022.

22. Relator was subsequently assigned patients and instructed on manners in which to bill assigned patients using proprietary software implemented by Defendants referred to as "LWSI".

23. The manner in which Relator was instructed to bill required the employee entering information to provide numerous false and fictitious statements intended to maximize reimbursements from Medicare or other government programs.

24. The Relator was instructed on the following fraudulent billing practices by his two supervisors at the Defendants.

25. The fraudulent billing practices were all taught to the Relator after three months of continued employment when he was informed that he would be working "in the field".

26. The manners in which the Relator was instructed to bill involved the following fraudulent billing practices:

A. Billing for "Individual" Sessions That Did Not Occur. Defendants hosted events where no medical services were provided in which they billed government programs for reimbursement of medical services. Specifically, the Relator was instructed to bill for multiple "individual" sessions while Defendants performed events associated with a "Summer Camp". The summer camp involved Defendants transporting and gathering approximately one hundred juveniles for the purpose of participating in different summer events, such as tie dying shirts and swimming at local pools. During these summer camps, no therapy services were provided. Nevertheless, the Relator was instructed to take patients, typically 3 patients and identify the patients as part of a number of "individual therapy" sessions. The Relator provided no services to the patients that were designated to receive individual therapy sessions and was provided with no reasonable opportunity to provide therapy services at these events. The Relator has personal knowledge that the fraudulent billing practice occurred for submission of billing records for Summer Camps dated July 15, 2022 and July 22, 2022. In addition, the Relator has personal

knowledge that patients identified as Patient K. N., Patient J. N., and Patient J.J.[1] would have had documentation submitted requesting reimbursement for services that were not provided. The fraudulent billing practice occurred in piror years based upon information and belief as it was a systemic practice within JISP.

B. Falsifying time submissions in which overlapping services performed by multiple employees. The Relator would frequently travel to patients' residences with another employee for the purpose of providing therapy sessions. These sessions would be attended by both a "mental health associate" (the Relator) and a "Peer Support Specialist". Despite both employees being in attendance at the patient's residence simultaneously, the Relator was instructed to misrepresent his time in coordination with the Peer Support Specialist to reflect that they were not in attendance at the residence at identical times. For instance, Relator would bill his time 10:00 am to 1:00 pm, and the peer support specialist accompanying the Relator would bill the same client from 1:00 pm to 4:00 pm so that times would not overlap. The Relator has personal knowledge that the fraudulent billing practice occurred for submission of billing records from April 1, 2022 until his termination on August 12, 2022. The fraudulent billing practice occurred in prior years based upon information and belief as it was a systemic practice within JISP. In addition, the Relator has personal knowledge that patients identified as Patient T.B, and Patient C.B. would have had documentation submitted requesting reimbursement for services that were not provided.

C. Falsifying time by overstating hours. The Relator was instructed to bill up to a three-hour individual appointment for each client regardless of the length of the session. Relator was informed that he should always bill up to a three-hour sessions because that is the maximum amount of time that he could enter for a session. The three hours, Relator was

[1] All patient names are abbreviated to maintain confidentiality.

instructed, could cover planning, travel, time spent with patient, and time spent documenting session. The Relator was instructed that this billing manner was more efficient than keeping accurate time records because it allowed Defendant to get more hours by seeing fewer clients. In addition, the Relator was informed that he could bill up to 9 hours for services in a single day simply based upon the number of patients who lived at a particular residence. The fraudulent billing practice occurred in prior years based upon information and belief as it was a systemic practice within JISP. In addition, the Relator has personal knowledge that patients identified as Patient T.B. and Patient C.B. would have had documentation submitted requesting reimbursement for services that were not provided

D. Billing multiple "individual" sessions, while meeting with multiple patients. It was proper and appropriate for Relator to make an onsite visit to a patient, at that patient's residence, and charge for an "individual" session. The Relator, however, was instructed to attend a residence where there were multiple patients in the residence. As a result of the layout of the Residence, the Relator could only meet with all the patients at once. The Relator was subsequently instructed to bill each patient separately as an "individual" session despite the fact that he was only able to consult with multiple patients at one time. The fraudulent billing practice occurred in prior years based upon information and belief as it was a systemic practice within JISP. In addition, the Relator has personal knowledge that patients identified as Patient T.B. and Patient C.B. would have had documentation submitted requesting reimbursement for services that were not provided.

E. Billing when no qualified services were provided. On multiple occasions, Relator was informed that he could bill for services provided when, in fact, no medical services were provided. For instance, Relator was informed that he could for an addition 3 hours per day

for driving a bus. The fraudulent billing practice occurred in prior years based upon information and belief as it was a systemic practice within JISP. In addition, the Relator has personal knowledge that patients identified as Patient K. N., Patient J. N., and Patient J.J. would have had documentation submitted requesting reimbursement for services that were not provided

F. Refusing to Discharge Patients Who Lacked a Medical Necessity for their Services. The Relator was informed that the Defendants' policy was to not close out clients from anyone's case load until new clients could be acquired. The Defendants informed the Relator that this policy was in place so that MHAs, peer support specialists, case managers, CSAs, and other employees at MCCC would not lose the ability to bill direct time hours. The Defendants also informed the Relator that certain patients would not be discharged until after the end of the summer because those clients could still attend the summer camp event they host each year. The fraudulent billing practice occurred in prior years based upon information and belief as it was a systemic practice within JISP. In addition, the Relator has personal knowledge that patients identified as Patient T.B. and Patient C.B would have had documentation submitted requesting reimbursement for services that were not provided.

27. The Relator was informed of the above identified fraudulent billing practices by supervisors during the course of his employment and for the purposes of record keeping and reimbursement submittal.

28. The Defendants, by and through the Relator's supervisors, further compelled the Relator and other of the Defendants employees (including MSAs and peer support specialists) to act in furtherance of these fraudulent billing practices with employment incentives or employment threats.

29. First, the Defendants offered bonus compensation to any employee who billed twenty-five (25) hours or more per week emphasizing the necessity of using the fraudulent billing practices identified above. Therefore, the Defendants encouraged employees to falsify medical billing records through additional compensation.

30. Second, the Defendants permitted employees who documented twenty-five (25) hours or more per week using the fraudulent schemes identified above to work from home. Employees who were not able to reach the goal on any given week were instructed to perform menial tasks at the Defendant's principal JISP location in Martin, KY. Therefore, the Defendants incentivized employees to falsify medical billing records through employment benefits including the ability to work from home.

31. Third, the Defendants indicated that an employee who was routinely unable to document up to twenty-five (25) hours per week using the fraudulent billing practices identified above would be subject to termination for lack of productivity.

32. Based upon statements made to the Relator, the Defendants knew or should have known that the statements contained in the billing records were false and fraudulent.

33. In regards to the fraudulent billing scheme identified above as paragraph 26.C (falsifying time by overstating hours worked), the Relator was informed by the Defendants that the federal and other government programs who reviewed the reimbursement submissions "did not like it" when the Defendants billed by overstating hours worked, however, the Defendants' own internal policies permitted them to do so in the JISP program.

34. The Relator was informed by the Defendant's representatives that if he told anyone about the information contained in paragraph number 33 (above), that the particular representative would deny it.

35. In addition, the Defendants were informed that a number of the fraudulent billing practices imposed upon the Relator were false, fraudulent, and incorrect by a third-party billing specialist including fraudulent billing practices identified above as paragraph 26.B (falsifying time in which overlapping services performed).

36. The Defendants disregarded the third-party billing specialist's instruction above in paragraph number 35 and informed the Relator that the third-party billing specialists "made up" policies and to continue to bill in the manner in which the Defendants instructed the Relator including using the fraudulent billing schemes above.

37. The Relator inquired about the legitimacy of filing claims for government reimbursement using billing practices that were false and fraudulent.

38. The Relator also began to refuse to compose or submit submissions that contained false or fraudulent submissions.

39. On or around August 8, 2022, the Relator expressed to the Defendants that he felt concerned with the submission of records that contained false information as a result of fraudulent billing practices identified in this Complaint.

40. In response to his inquiry, the Relator was informed on August 12, 2022 that his employment was no longer needed and he was terminated.

**COUNT I – SUBMISSION OF FALSE CLAIMS**
**FEDERAL FALSE CLAIMS ACT, 31 U.S.C. §§ 3729(a)(1)(A), *et seq.***

41. Relator repeats each and every allegation of Paragraphs 1 through 36 of this Complaint with the same force and effect as if set forth herein.

42. Through the foregoing conduct, the Defendants, MCCC and Mountain Plus, knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), including, without

limitation, claims for medical services that were not reimbursable and lacked medical necessity for reimbursement.

43. The claims relevant to this Count include all claims within the fraudulent scheme of the Defendants, MCCC and Mountain Plus, which fraudulent scheme commenced upon the inception of MCCC's JISP program on or around January 1, 2019 and continues to date upon presumption and belief.

44. Defendants, MCCC and Mountain Plus, had knowledge (as defined by the False Claims Act, 31 U.S.C. § 3729(b)(1)(A)) of the claims' false or fraudulent nature because the Defendants knew that the claims were being submitted for reimbursement containing false or fraudulent information intended to increase wrongfully reimbursement rates.

45. Defendants, MCCC and Mountain Plus, submitted claims for payment in amounts that were falsely inflated or exaggerated; and submitted claims for payment for services rendered to patients that were unnecessary and or unqualified.

46. By virtue of the false or fraudulent claims presented or caused to be presented by the Defendants, the United States suffered damages, including without limitation paying for the reimbursement of medical services and materials that were fraudulently documented.

47. Defendants, MCCC and Mountain Plus, are liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty for each false claim presented or caused to be presented by Defendant.

**COUNT II – USE OF A FALSE RECORD**
**FEDERAL FALSE CLAIMS ACT, 31 U.S.C. §§ 3729(a)(1)(B), *et seq.***

48. Relator repeats each and every allegation of Paragraphs 1 through 47 of this Complaint with the same force and effect as if set forth herein.

49. Through the foregoing conduct, Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

50. The false or fraudulent records or statements relevant to this Count include all requests for reimbursement, clinical notes, and other reimbursement related form which was intended to mislead government reimbursement programs into providing reimbursement for services that were not qualified for reimbursement.

51. The claims relevant to this Count include all claims within the fraudulent billing practices of the Defendants, MCCC and Mountain Plus, which fraudulent billing practices commenced upon the inception of MCCC's JISP program on or around January 1, 2019 and continues to date upon presumption and belief.

52. By virtue of the false or fraudulent claims presented or caused to be presented by the Defendants, the United States suffered damages, including without limitation paying for the reimbursement of medical services and materials that were fraudulently documented.

53. Defendants, MCCC and Mountain Plus, are liable to the United States for treble damages under the FCA, in an amount to be determined at trial, plus a civil penalty for each false claim presented or caused to be presented by Defendant.

**COUNT III- RETALIATION**
**RETALIATION AGAINST RELATOR IN VIOLATION OF 31 USC § 3730(H)**

54. Relator repeats each and every allegation of Paragraphs 1 through 53 of this Complaint with the same force and effect as if set forth herein.

55. Relator's actions in internally reporting the fraudulent billing practices and Defendant's violations were protected activities within the meaning of 31 USC § 3730(h).

56. Relator engaged in the following reporting actions that are protected under 31 USC §3730(h):

A. On or around August 8, 2022, that he felt concerned with the submission of records that contained false information as a result of fraudulent billing practices identified in this Complaint;

B. From August 1, 2022 until August 12, 2022 the Relator made statements that he refused to make submissions of medical documents that contained intentionally false and deceptive information;

57. The Defendants were aware of Relator's complaints regarding Defendant's practices.

58. The Relator's complaints regarding Defendantss practices put Defendant on notice that Relator's complaints could lead to *qui tam* action under the False Claims Act.

59. The Defendants terminated Relator in retaliation for his complaints regarding Defendant's false/fraudulent billing practices and its False Claims Act violations.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, the Relator, Austin Curnutte prays that the Court enter judgment against the Defendants, Mountain Comprehensive Care Centre, Inc. and Mountain Plus Services, Inc. as follows:

(a) that the United States be awarded damages in the amount of three times the damages sustained by the United States because of the false claims alleged within

this Complaint, as the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, provides;

(b) that civil penalties be imposed for each and every false claim that Defendants caused to be presented to the United States and/or its grantees, and for each false record or statement that Defendants made, used, or caused to be made or used that was material to a false or fraudulent claim;

(c) that the Relator be awarded the maximum amount allowed to it pursuant to the False Claims Act; and

(d) the Relator be awarded damages an amount sufficient to compensate the Relator for all of his damages suffered as result of the wrongful termination of the Defendants as identified in 31 U.S.C. §3230(h) including reinstatement, back pay, two times the amount of back pay, interest on the back pay, compensation for special damages, attorneys' fees, costs, and expenses that the Relator necessarily incurred in bringing and pursuing this case be awarded;

(e) that this Court award such other and further relief as it deems proper.

Respectfully submitted,

Nick Wallingford, Esq.
**WALLINGFORD LAW, PSC**
1050 Monarch Street, Suite 100
Lexington, Kentucky 40513
Telephone: (859) 219-0066
nick@wallingfordlaw.com

Mark A. Wohlander, Esq.
**WOHLANDER LAW OFFICE, PSC**
P.O. Box 910483
Lexington, Kentucky 40591
Telephone: (859) 361-5604
CO-COUNSEL FOR RELATOR

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing *Qui Tam* Complaint filed under seal pursuant to 31 U.S.C. § 3730 was sent to the following:

Hon. Merrick Garland
Attorney General of the United States
Department of Justice
10th & Constitution Avenue, N.W.
Washington, D.C. 20530
***[Via Federal Express]***

Hon. Carlton S. Shier, IV
Hon. Christine Corndorf
United States Attorney for the Eastern District of Kentucky
260 West Vine Street, Suite 300
Lexington, Kentucky, 40507-1671
***[Via Hand Delivery]***

COUNSEL FOR RELATOR